**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| KATRINA HARTMAN,<br><br>    Plaintiff,<br><br>    v.<br><br>LUZERNE COUNTY, *et al.*,<br><br>    Defendants. | CIVIL ACTION NO. 3:CV-14-2246<br><br>(JUDGE CAPUTO) |

### **MEMORANDUM**

Presently before the Court is Defendants' Motion to Dismiss Plaintiff's Complaint for failure to state a claim upon which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6) (Doc. 11). Plaintiff Katrina Hartman filed this Complaint (Doc. 1) as the administratrix of the estate of decedent Michelle Ann Dzoch, her mother. The Complaint alleges the following claims: a violation of the constitutional right to substantive due process pursuant to 42 U.S.C. § 1983 against all Defendants; willful misconduct under Pennsylvania state law against all Defendants; failure to train/supervise under § 1983 against Luzerne County, Robert Lawton, Luzerne County Council, Luzerne County Emergency Management Agency, and Luzerne County 911; individual liability under § 1983 against Stephen Bekanich, Fred Rosencrans, Debra Pac and James Ostrowski; additional grounds for willful misconduct against Luzerne County 911, Fred Rosencrans, Debra Pac and James Ostrowski; wrongful death against all Defendants; and a survival action against all Defendants. (Doc. 1.) Plaintiff also requests punitive damages. (Doc. 1, 41.) Defendants seek to have all claims dismissed for failure to state a claim upon which relief can be granted.

Because Plaintiff has failed to meet the high standard required to state a claim that decedent's constitutionally-protected substantive due process rights were violated by a state-created danger, Defendants' Motion to Dismiss (Doc. 11) will be *granted.* Plaintiff's Complaint (Doc. 1) will be dismissed*.*

## I. Background

**A. The Parties**

Plaintiff Katrina Hartman is an adult resident of Shickshinny, Pennsylvania. (Doc. 1, ¶ 1.) She is the daughter of the decedent, Michelle Ann Dzoch ("the decedent"). (*Id.*, ¶¶ 1-2.) Ms. Dzoch died from carbon monoxide poisoning due to smoke inhalation from a fire at her residence, 76 Main Street, Mocanaqua, Conyngham Township, Luzerne County, Pennsylvania. (*Id.*, ¶¶ 2-3.) At the time of her death, Ms. Dzoch was 52 years old. (*Id.*, ¶ 5.) Letters of Administration for Ms. Dzoch's estate were granted to her daughter, Plaintiff Katrina Hartman, on June 3, 2014, by the Register of Wills of Luzerne County. (*Id.*, ¶ 6.)

The following parties are Defendants in this action: Luzerne County, Luzerne County Emergency Management Agency, Luzerne County Council, County Manager Robert M. Lawton, Luzerne County 911, Stephen Bekanich, Fred J. Rosencrans, James Ostrowski, and Debra M. Pac. (*Id.*) Defendant Luzerne County ("the County") is a political subdivision of the Commonwealth of Pennsylvania. (*Id.*, ¶ 8.) The County owns, operates, manages, directs and controls Defendant Luzerne County 911, a division of Defendant Luzerne County Emergency Management Agency ("EMA"). (*Id.*, ¶ 11.) The County operates under a home rule charter, with legislative functions vested in Defendant Luzerne County Council ("the Council") and daily operations overseen by a County Manager. (*Id.*, ¶ 12.) Defendant Council consists of eleven (11) members. (*Id.*, ¶ 13.)

Defendant Robert C. Lawton is and was the Luzerne County Manager at all relevant times. (*Id.*, ¶ 15.) Defendant Lawton, in his official capacity, is the head of the Executive Branch of the Luzerne County government, and is responsible for the administration of all operations placed in his charge by the Home Rule Charter, the Administrative Code and any other Luzerne County ordinances and/or resolutions. (*Id.*, ¶ 16.) Pursuant to Pennsylvania statutes, the County, County Council and/or County Manager are responsible for design, formulation, and implementation of the County's 911 plan. (*Id.*, ¶ 17.)

Defendant Luzerne County Emergency Management Agency is an agency of Luzerne County. (*Id.*, ¶ 18.) According to the Complaint, its website states that its purpose is "to

protect Luzerne County's public health, safety and environment." (*Id.*, ¶ 19.) Defendant Stephan Bekanich was at all relevant times the EMA Coordinator, and is sued in his individual and official capacities. (*Id.,* ¶¶ 20-21.)

Defendant Luzerne County 911 is a department and/or agency created by the County and the Agency, and operates as an independent agency. (*Id.,* ¶ 22.) Defendant Fred J. Rosenscrans is and at all material times was the "9-1-1 Executive Director" in charge of Defendant Luzerne County 911. (*Id.,* ¶ 24.) Luzerne County 911 is a local entity, which employs, owns, operates, manages, directs and controls emergency 911 communications and emergency dispatchers. (*Id.,* ¶ 25.) Luzerne County 911 operates a Public Safety Answering Point, which processes approximately 634 calls to 911 and 594 other calls per day. (*Id.,* ¶ 27.) As of 2014, Luzerne County 911 dispatches 110 fire departments, 85 EMS entities, 55 full-time police departments, and six (6) part-time police departments. (*Id.,* ¶ 28.)

Luzerne County 911 employees are cross-trained to serve two (2) distinct functions. (*Id.,* ¶ 30.) "Call takers" answer all incoming 911 emergency and non-emergency calls and determine the need for police, fire, EMS, or other response by entering information into a Computer Aided Dispatch (CAD) system. (*Id.*) "Dispatchers" monitor radio channels, in-service units (police, fire, EMS) their locations, activities, and availability for responses. (*Id.*) They also monitor the activities of each unit for needs such as back up or other data. (*Id.*)

Luzerne County 911 also utilizes "public safety telecommunicators" as first responders, whose primary responsibility is to receive, process, transmit and/or dispatch emergency and non-emergency calls for law enforcement, fire, emergency medical, and other public safety services via telephone, radio, and other communication devices. (*Id.*, ¶ 31.) Defendants Luzerne County, Luzerne County EMA, and/or Luzerne County 911 employed Defendant Debra M. Pac as a "telecommunicator," and employed Defendant James Ostrowski as a manager. (*Id,* ¶¶ 32-38.)

**B. Factual Background**

The facts, as stated in the Complaint (Doc. 1) and attached exhibits are as follows:

At or around 10:46 a.m. on May 15, 2014, a fire started in a second floor room in the decedent's residence at 76 Main Street, Mocanaqua, Conyngham Township, Luzerne County. (*Id.*, ¶ 44.) At the instruction and in the presence of her mother, the decedent's daughter, Holly Dzoch, called Luzerne County 911 to report a fire and to request fire and emergency assistance. (*Id.*, ¶ 45.) At 10:46 a.m., Defendant Debra M. Pac received the call as a telecommunicator at Luzerne County 911. (*Id*, ¶ 46.) After Holly Dzoch stated that there was a fire in her home, the conversation turned to the location of the fire. The transcript, attached to the Complaint as Exhibit A, is a record of that conversation:

> 911 DISPATCHER: Where, ma'am? What's your address?
>
> HOLLY DZOCH: 76 Main Street, Moc.
>
> 911 DISPATCHER: Main Street in – are you in Conyngham Township or Conyngham Borough?
>
> HOLLY DZOCH: Conyngham Borough, Mocanaqua.
>
> 911 DISPATCHER: Conyngham Borough.

(*Ex. A,* Doc. 1-1, at 3.) Ms. Pac instructed Ms. Dzoch to get everyone out of the house, and Ms. Dzoch is recorded as saying "Everybody out of the house. Let's go." (*Id.*)

Holly Dzoch incorrectly indicated that the home was in Conygham Borough, instead of Conyngham Township. (*Id.*, ¶ 48.) Mocanaqua is located in Conyngham Township. (*Id.*) There is no Mocanaqua Section in Conyngham Borough. (*Id.*, ¶ 53.) Conyngham Borough is located approximately fifteen (15) miles away from Mocanaqua. (*Id.*, ¶ 54.) Luzerne County 911 Standard Operating Guidelines lists a series of specific geographical problem areas within its boundaries, including Mocanaqua, which is listed in Guideline 13.3 as part of Conygham Township. (*Id.*, ¶¶ 49-50.)

At 10:48 a.m., Defendant Pac dispatched responders from Sugarloaf Fire & Rescue, Hazle Township Fire & Rescue, and Valley Regional Fire & Rescue in the Conyngham Valley area to Main Street in Conygham Borough. (*Id.*, ¶ 51.) Luzerne County 911 stated to Valley

Regional Fire & Rescue that the fire was at "76 Main Street, Conyngham–Mocanaqua Section." (*Id.,* ¶ 52.)  The above-listed fire departments are at least fifteen (15) miles from the decedent's home.  (*Id.,* ¶¶ 54-55.)  Defendants did not dispatch Mocanaqua Volunteer Fire Co. No. 1, which is located approximately 1/10 of a mile from decedent's home.  (*Id.,* ¶¶ 56-57.)

At 10:49 a.m., Valley Regional Fire & Rescue contacted Luzerne County 911 to question and verify the stated address, because Mocanaqua is in Conyngham Township, not in Conyngham Borough.  (*Id.,* ¶ 58.)  An unidentified male telecommunicator responded, saying "we're aware. We can only verify as though Conyngham Borough." (*Id.,* ¶ 59.)  This caller also asked Luzerne County 911 whether it put out a call to Mocanaqua Volunteer Fire Co. No. 1 to check on "their Main Street." (*Id.,* ¶ 61.)  Luzerne County did not respond to this inquiry.  (*Id.,* ¶¶ 62-63.)

At 10:49 a.m., Luzerne County 911 attempted to call back a hang-up call, and when the caller answered, he stated he was calling to report a fire at "80 Main Street." (*Id.,* ¶¶ 63-64.)  Defendant Pac asked the caller whether he was referring to "Conyngham Borough or Township, because we received a call for Conyngham Borough." He responded "Um, I'm not sure what the Borough is.  I know it's Mocanaqua, right across the bridge from Shickshinny, Main Street, the building right next to ours." (*Id.,* ¶ 65.)  Plaintiff asserts that at this time, 10:49 a.m., Defendants knew or should have known that the fire was in Mocanaqua, Conyngham Township, and the dispatch was erroneous.  (*Id.,* ¶¶ 66-68.)

At 10:50 a.m., Valley Regional Fire & Rescue again called Luzerne County 911 to confirm that they should be going to Conyngham Borough and not Conyngham Township, which Luzerne County 911 confirmed.  (*Id.,* ¶¶ 69-70.)  Luzerne County 911 told Valley Regional Fire & Rescue that they were having Mocanaqua Volunteer Fire Co. No. 1 check "their Main Street." (*Id.,* ¶ 70.)  Luzerne County 911 did not dispatch crews from Mocanaqua Volunteer Fire Co. No. 1 at this time.  (*Id.,* ¶ 71.)

5

At 10:52 a.m., Charles Gelb[1], a witness, called Luzerne County 911 to report a house fire located in Mocanaqua, Pennsylvania, on the "corner of Main Street and Nicely" and that there was someone still inside. (*Id.,* ¶¶ 72-73.) Mr. Gelb repeatedly confirmed the location as Mocanaqua and that there was a person inside the structure, which was engulfed in smoke. (*Id.,* ¶ 74.) Mr. Gelb indicated that a firefighter was on site, but an engine was needed because he was unable to get inside the structure. (*Id.,* ¶ 75.) At 10:53 a.m., Luzerne County 911 indicated to Mr. Gelb that it would dispatch Mocanaqua Volunteer Fire Co. No. 1. (*Id.,* ¶¶ 76-77.)

At approximately 10:53 a.m., another 911 caller indicated that there was a fire in Mocanaqua, and a person was trapped upstairs. (*Id.,* ¶ 78.) Defendant Pac told this caller that "we do have everybody on the way." (*Id.,* ¶ 79.) There is no record of Luzerne County 911 dispatching Mocanaqua Fire Co. No. 1 at this time. (*Id.,* ¶ 80.)

At 10:53 a.m., Valley Regional Fire & Rescue in Sugarloaf reported to Luzerne County 911 that 76 Main Street in Conyngham Borough "does not exist," and the call to them was cancelled. (*Id.,* ¶¶ 81-82.)

At 10:54 a.m., Luzerne County 911 dispatched Mocanaqua Volunteer Fire Co. No. 1 to the fire first reported at 10:46 a.m. (*Id.,* ¶ 84.) At 10:55 a.m., Luzerne County 911 contacted Columbia County to request assistance at the fire. (*Id.,* ¶ 85.)

Plaintiff asserts that due to the incorrect dispatch by the defendants, Mocanaqua Volunteer Fire Co. No. 1 was significantly delayed in responding to the fire. (*Id.,* ¶ 91.) Plaintiff contends that the defendants' knowing and improper handling of the decedent's daughter's 911 call caused the fire company to face an increasingly perilous condition when it arrived at the fire. (*Id.,* ¶ 92.) When he saw the fire, the Mocanaqua Fire Chief immediately called for a second alarm assignment due to the heavy smoke and fire. (*Id.,* ¶ 93.) Upon arrival at the fire, the fire crew faced heavy fire conditions, which trapped the

---

[1] The man who called 911 at 10:52 a.m. is referred to as "Charles Gelb" in the Complaint (Doc. 1) and "Charles Gill" elsewhere.

decedent on the second floor. (*Id.*, ¶¶ 94-95.)  The crew eventually brought the fire under control. (*Id.*, ¶ 95.) The decedent, Michelle Ann Dzoch, was pronounced dead as the result of accidental death by carbon monoxide intoxication by the Luzerne County Coroner that afternoon: May 15, 2014, at 2:50 p.m.  (*Id.,* ¶ 96.)

Plaintiff contends that as a result of the delay in dispatching the correct fire rescue crew, the decedent experienced an increased risk of harm, which ultimately resulted in her death. (*Id.,* ¶ 97.)  Plaintiff alleges that the decedent relied on the defendants to correctly dispatch fire crews, which were her only chance of assistance.  (*Id.,* ¶ 98.)  Plaintiff asserts that the defendants' actions barred the decedent from receiving assistance and promised public aid from the fire department, and restricted the freedom of the decedent, in violation of her constitutional rights. (*Id.,* ¶ 100.)  Plaintiff contends that the decedent was unable to escape her home, due to fire and smoke inhalation, without the assistance of rescue personnel. (*Id*.)  Plaintiff maintains that the decedent relied on the defendants' response that help was on the way, as she knew that the closest fire department was nearby.  (*Id.,* ¶ 101.)

Plaintiff contends that the perilous condition of the decedent was known to the defendants, in particular Luzerne County 911, Luzerne County EMA, Rosencrans, Pac, and Ostroski, when they dispatched Valley Regional Fire & Rescue in Conyngham Borough, instead of the closer Mocanaqua Volunteer Fire Co. No. 1.  (*Id.,* ¶ 103.) Plaintiff argues that Defendants violated Luzerne County 911 Standard Operating Procedure No. 5.0.1, which states:

> 5.0.1 Address Verification
> The most important piece of information that can be obtained from a 911 caller is the incident location/address. Location, location, location!!! Everything else becomes secondary until the "where" is obtained.  Telecommunicators need to remember that an incident's location should include, at a minimum, a street address and municipality.  Other items that are necessary, if available, are apartment numbers, sections of a municipality, business or complex names, etc. Failure to make every attempt to obtain this most important piece of information is inexcusable.

(*Id.,* ¶ 105.)

**C. Procedural Background**

Based on the foregoing, Plaintiff initiated this action by filing a complaint in this court on November 24, 2014 (Doc. 1), containing the following counts:

Count I: "state-created danger" under the Fourteenth Amendment's guarantee of substantive due process rights, pursuant to 42 U.S.C. § 1983, against all Defendants.

Count II: willful misconduct (a State Tort Claims Act exception) against all Defendants.

Count III: additional grounds under § 1983, alleging failure to train/supervise against Luzerne County, Lawton, Luzerne County Council, Luzerne County AMA, and Luzerne County 911.

Count IV: additionally grounds under § 1983 for direct involvement against Defendants Bekanich, Rosencrans, Pac and Ostrowski.

Second Count IV: additional grounds under "willful misconduct" for direct involvement against Luzerne County 911, Rosencrans, Pac, and Ostrowski.

Count V: wrongful death pursuant to Pa. C.S.A. § 8301 against all Defendants.

Count VI: survival action on the part of the decedent's estate against all Defendants.

Second Count VI: punitive damages against all Defendants.

On January 22, 2015, Defendants filed this Motion to Dismiss (Doc. 11) and a brief in support (Doc. 12). On February 16, 2015, Plaintiff filed a Reply to Defendants' Motion (Doc. 15), along with a Brief in Opposition (Doc. 16). On February 18, Plaintiff requested that oral argument be scheduled on this matter (Doc. 18). On March 3, 2015, Defendants filed a Reply Brief to Plaintiff's Brief in Opposition (Doc. 19). On March 25, I issued an order scheduling oral argument in response to the request of the plaintiff (Doc. 20). On April 21, 2015, at 1:30 p.m., oral argument was held before me on this Motion to Dismiss. This Motion is fully briefed and ripe for disposition.

## II. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. When considering such a motion, the Court's role is limited to determining if a plaintiff is entitled to offer evidence in support of his claims. *See Semerenko v. Cendant Corp.*, 223 F.3d 165, 173 (3d Cir. 2000). The Court does not consider whether a plaintiff will ultimately prevail. *See id.* A defendant bears the burden of establishing that a plaintiff's complaint fails to state a claim. *See Gould Elecs. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000).

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The statement required by Rule 8(a)(2) must "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (*per curiam*) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Detailed factual allegations are not required. *Twombly*, 550 U.S. at 555. However, mere conclusory statements will not do; "a complaint must do more than allege the plaintiff's entitlement to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Instead, a complaint must "show" this entitlement by alleging sufficient facts. *Id.* "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). As such, "[t]he touchstone of the pleading standard is plausibility." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012).

The inquiry at the motion to dismiss stage is "normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

Dismissal is appropriate only if, accepting as true all the facts alleged in the complaint, a plaintiff has not pleaded "enough facts to state a claim to relief that is plausible on its face,"

*Twombly*, 550 U.S. at 570, meaning enough factual allegations "'to raise a reasonable expectation that discovery will reveal evidence of'" each necessary element. *Phillips v. Cnty. of Allegheny,* 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679.

The Court need not assume the plaintiff can prove facts that were not alleged in the complaint, *see City of Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 263 & n.13 (3d Cir. 1998), or credit a complaint's "'bald assertions'" or "'legal conclusions.'" *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429–30 (3d Cir. 1997)).

In deciding a motion to dismiss, the Court considers the complaint, exhibits attached to the complaint, and matters of public record. *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.,* 998 F.2d 1192, 1196 (3d Cir. 1993)). The Court may also consider "undisputedly authentic" documents when the plaintiff's claims are based on the documents and the defendant has attached copies of the documents to the motion to dismiss. *Pension Benefit Guar.*, 998 F.2d at 1196.

### III. Discussion

Defendants' Motion to Dismiss (Doc. 11) argues that Plaintiff has failed to meet the high burden to establish a violation of the substantive due process clause pursuant to 42 U.S.C. § 1983, in the context of state actors failing to provide rescue services.

The state-created danger theory is an exception to the general prohibition on alleging a claim under a theory of substantive due process in a situation where government agents fail to competently provide rescue services. There is no "federal constitutional right to rescue services, competent or otherwise." *Brown v. Pa., Dep't of Health Emergency Med. Servs. Training Inst.*, 318 F.3d 473, 478 (3d Cir. 2003). The United States Supreme Court has long

recognized that the due process clause does not create a right to affirmative protection from non-governmental harm:

> The Clause is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security. It forbids the State itself to deprive individuals of life, liberty, or property without "due process of law," but its language cannot fairly be extended to impose an affirmative obligation on the State to ensure that those interests do not come to harm through other means.

*DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 195 (1989). Thus, where the government fails to provide such services, or when it does provide such services but does so in an incompetent manner, there is no cause of action. *Brown,* 318 F.3d 473.

There are limited exceptions to this general rule, and one is the state-created danger rule. Plaintiff argues that this case falls within this exception, whereas Defendants argues that it does not. To establish a violation of constitutionally-protected substantive due process rights under the state-created danger exception, the Third Circuit Court of Appeals ("Third Circuit") has established the following test:

(1) the harm ultimately caused was foreseeable and fairly direct;

(2) a state actor acted with a degree of culpability that shocks the conscience;

(3) a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general; and

(4) a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.

*Walter v. Pike Cnty., Pa.*, 544 F.3d 182, 192 (3d Cir. 2008) (citing *Bright v. Westmoreland County*, 443 F.3d 276, 281 (3d Cir. 2006), *cert. denied*, 549 U.S. 1264 (2007)).

The parties dispute whether the events that led up to Michelle Ann Dzoch's death constituted a state-created danger. Viewing all facts in the Complaint and supporting documents as true, and resolving all inferences in favor of the Plaintiff, Plaintiff has failed to state a claim under a theory of state-created danger.

The parties disagree about whether there was a state actor who acted affirmatively in a way that created a danger to the decedent or rendered the decedent more vulnerable to danger than had the state not acted at all.  Plaintiff argues that the 911 telecommunicator, Debra Pac, who received the 911 call from Holly Dzoch about the fire, engaged in an affirmative act when she sent the incorrect fire company to the incorrect address, and then failed to correct this mistake.  The fire was in Conyngham Township ("the Township"), but the fire company was sent from Conyngham Borough ("the Borough") to an address in the Borough.  In her phone call to Ms. Pac, Holly Dzoch told Ms. Pac that the fire was in Conyngham Borough. (Doc. 1-1, *Ex. A.*)  The transcript, attached to Plaintiff's Complaint as Exhibit A, reveals that Ms. Pac attempted to clarify the address with Ms. Dzoch in her call at 10:46 a.m.:

> 911 DISPATCHER: Where, ma'am? What's your address?
>
> HOLLY DZOCH: 76 Main Street, Moc.
>
> 911 DISPATCHER: Main Street in – are you in Conyngham Township or Conyngham  Borough?
>
> HOLLY DZOCH: Conyngham Borough, Mocanaqua.
>
> 911 DISPATCHER: Conyngham Borough.

(*Id.,* at 3.)

Plaintiff argues that Ms. Pac's affirmative act was mistakenly thinking the fire was in Conyngham Borough, when she should have known better because Mocanaqua is in the Township, not the Borough.  However, Ms. Pac attempted to clarify this, and Holly Dzoch told her Conyngham Borough.  Plaintiff argues that because subsequent calls reveal attempts to clarify that the fire was in the Township, Ms. Pac acted affirmatively in not correcting where the fire was located.  However, the call transcripts reveal ongoing confusion and attempts to clarify on the part of the defendants, rather than clear-cut instructions that the fire was in the Township.  The dispatcher sent the correct department to the correct location at 10:54 a.m., eight (8) minutes after receiving the initial call.

Viewing all facts in a light most favorable to the plaintiff, she has failed to show that

a state actor affirmatively took action in a way that created a danger to the decedent or that rendered the decedent more vulnerable to danger than had the state not acted at all. It appears that the dispatcher was merely reacting to the information provided to her. The state-created danger theory is a narrow exception to a general rule, and even if Ms. Pac should have known, as Plaintiff alleges, that she needed to correct her initial dispatch minutes earlier than she ultimately did, this fails to rise tob    the level of an affirmative act constituting a state-created danger.

The conduct on the part of Defendants is not an affirmative act that created danger and caused harm to the decedent, such that it falls under the narrow exception to the general prohibition on substantive due process clause actions stemming from a government actor's failure to provide rescue services. Thus, the defendants' actions do not rise to the level of a violation of the decedent's constitutionally-protected substantive due process rights. Furthermore, the state actors' culpability is not "conscience-shocking," as required to state a claim under the state-created danger exception.

Based on the foregoing, Plaintiff has failed to state a claim that her due process rights were violated by a state-created danger, pursuant to 42 U.S.C. § 1983. Defendants' Motion to Dismiss (Doc. 11) will be *granted*.

As I find that Plaintiff failed to state a claim upon which relief may be granted with respect to her claims under federal law, and no federal claims remain, I will not exercise jurisdiction over her claims brought under Pennsylvania state law. Plaintiff's Complaint (Doc. 1) will be *dismissed*.

Under the Federal Rules of Civil Procedure, leave to amend should be freely given when justice so requires. See Fed. R. Civ. P. 15(a). While Rule 15 liberally allows leave to amend be "freely given," district courts have the discretion to deny a motion for leave to amend where it is apparent from the record that the amendment would be futile.. *See Lake v. Arnold*, 232 F.3d 360, 373 (3d Cir. 2000). "Futility" means that the complaint, as amended, would fail to state a claim upon which relief could be granted. *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000) (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d

1410, 1434 (3d Cir. 1997)).  Upon examination of the Complaint and 911 call transcripts attached as an exhibit thereto, amendment would be futile, because amendment would not cure the identified deficiencies in Plaintiff's attempt to state a constitutional claim.  Thus, Plaintiff will not be granted leave to amend her complaint.

## IV. Conclusion

For the above reasons, Defendants' Motion to Dismiss (Doc. 11) will be *granted*.  An appropriate order follows.

April 4, 2015  /s/ A. Richard Caputo
Date  A. Richard Caputo
  United States District Judge